1  **WO**                                                                    **JWB**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9  Rene Camacho,                          )   No. CV 07-0812-PHX-MHM (ECV)
                                          )
10            Plaintiff,                   )   **ORDER**
                                          )
11  vs.                                    )
                                          )
12                                         )
   James Jones, et al,.                   )
13                                         )
              Defendants.                 )
14                                         )
                                          )
15  _____)

16        Plaintiff Rene Camacho filed this civil rights action under 42 U.S.C. § 1983 (Doc.

17  # 1).  Defendants Jones, Burke, Crabtree, Bartos, and Schriro move for summary judgment

18  (Doc. # 61).[1]  The motion is fully briefed (Doc. ## 87, 94, 97).  Defendants have also filed

19  a Motion to Strike Plaintiff's Supplemental Response; the Motion to Strike is fully briefed

20  (Doc. # 101, 102, 104).  And Plaintiff has filed a Motion to Strike Defendants' Reply in

21  Support of their Motion to Strike, to which Defendants have responded (Doc. # 105, 106).

22        The Court will deny the parties' motions to strike, grant Defendants' summary

23  judgment motion, and dismiss this action with prejudice.

24  ///

25  ///

26  ///

27  _____

28        [1]The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir.
   1998) (*en banc*), informing Plaintiff of his obligation to respond (Doc. # 66).

## I.   Background

This case arises from Plaintiff's reclassification and placement in maximum security custody.  Plaintiff alleged that he was reclassified to maximum custody without due process.  Specifically, Plaintiff claimed that he was not permitted to attend or present evidence at his reclassification hearing, and he was not provided sufficient time to appeal.  Plaintiff named as Defendants Arizona Department of Corrections (ADC) employees (1) Correctional Officer IV James Jones, (2) Administrator Audrey Burke, (3) Classification Manager Stacey Crabtree, (4) Complex Warden Ivan Bartos, and (5) former Director Dora Schriro.  Plaintiff sought injunctive relief and damages (Doc. # 1).

Defendants move for summary judgment on the grounds that (1) Plaintiff cannot establish an atypical hardship that would trigger a right to due process in his reclassification; (2) if the Due Process Clause is implicated, Plaintiff received due process, and there is some evidence supporting his maximum custody placement; (3) Defendants were not personally involved in any violation of Plaintiff's constitutional rights; (4) Plaintiff has not shown a compensable injury; and (5) Defendants are entitled to Eleventh Amendment immunity (Doc. # 61).

In support of their motion, Defendants submit their Statement of Facts (Doc. # 62, DSOF), the declarations of Crabtree, Burke, Bartos, Jones, Dupree, and Schriro (id., Exs. A-F); Department Order (DO) 801 Inmate Classification (id., Ex. A, Attach. 1); Plaintiff's Inmate Record (id., Ex. A, Attach. 2); ADC investigation reports (id., Ex. A, Attach. 3); various Classification documents regarding Plaintiff (id., Ex. A, Attachs. 4-5); Plaintiff's inmate letters and appeals challenging his classification, and responses thereto (id., Ex. A, Attachs. 6-9); and an excerpt from Plaintiff's deposition (id., Ex. G, Pl. Dep., March 19, 2008).

Plaintiff responds on the grounds that (1) he was entitled to due process protections before his reclassification hearing because the ADC's reclassification policies and Ariz. Rev. Stat. § 41-1604.06 create a liberty interest; (2) he did not receive the due process protections to which he was entitled; (3) maximum custody placement is significant and atypical because

1  individuals from Plaintiff's Do Not House With (DNHW) list may reside in his unit;
2  (4) Plaintiff was denied parole because of information contained in his predator pack,
3  rendering his maximum custody placement significant and atypical; (5) his maximum
4  custody placement is not supported by some evidence; (6) Defendants were personally
5  involved in the denial of Plaintiff's due process protections; (7) Plaintiff has suffered a
6  compensable injury and is entitled to punitive damages; and (8) Defendants are not entitled
7  to Eleventh Amendment immunity (Doc. # 87).

8        In support of his response, Plaintiff submits his Statement of Facts (Doc. # 88, PSOF),
9  his own Declaration (id., Attach. 1); copies of documents related to his reclassification (id.,
10  Exs. 1-5); responses to Plaintiff's request for admissions (id., Ex. 6); a copy of ADC's
11  Classification Manual (id., Ex. 7); copies of inmate letters and appeals (id., Exs. 8-11, 20);
12  information related to Plaintiff's Security Threat Group (STG) validation (id., Exs. 12-13,
13  16); various incident reports (id., Exs. 14-15, 17-19); and a copy of Director's Instruction
14  # 232 related to Inmate Classification (id., Exs. 21-23).[2]

15       In reply, Defendants maintain that (1) Plaintiff has not introduced any evidence to
16  suggest the conditions in maximum custody are atypical and significant; (2) some evidence
17  exists to support his maximum custody placement; (3) Defendants were not personally
18  involved in a violation of Plaintiff's due process rights; (4) Plaintiff cannot establish
19  entitlement to punitive damages; and (5) Defendants are entitled to qualified immunity (Doc.
20  # 94).

21       Plaintiff filed a supplemental response, providing additional legal citations and
22  argument in support of his previously proffered arguments (Doc. # 97).

23  **II.    Motions to Strike**

24       Defendants have filed a Motion to Strike Plaintiff's supplemental response opposing
25  summary judgment (Doc. # 101).  Defendants contend that a supplement is not contemplated

26

27       [2] The Court notes that while Plaintiff has submitted evidence related to his STG
28  validation, that claim is not properly before the Court.  In any event, Plaintiff was ultimately
    not validated as a member of a STG (Doc. # 88, Ex. 13).

by Federal Rule of Civil Procedure 56. Plaintiff has responded, arguing that because the Court permitted him an extension of time to file his response after Defendants supplied additional discovery not previously disclosed, the Court should not strike the supplemental response (Doc. # 102). Defendants reply, pointing out that Plaintiff filed his original response before his motion for extension of time was granted, thereby rendering the motion for extension moot (Doc. # 104).

Because the Court granted Plaintiff an extension of time to file his response after he received supplemental discovery, the Court will deny Defendants' motion to strike Plaintiff's supplemental response. The Court will also deny Plaintiff's motion to strike Defendants' reply in support of their motion to strike (Doc. # 105).

**III.    Legal Standards**

  **A.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own

1   pleading." Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>,

2   475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact

3   conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require

4   a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>

5   <u>of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates

6   the entry of summary judgment against a party who, after adequate time for discovery, fails

7   to make a showing sufficient to establish the existence of an element essential to that party's

8   case and on which the party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322-

9   23.

10      When considering a summary judgment motion, the court examines the pleadings,

11   depositions, answers to interrogatories, and admissions on file, together with the affidavits,

12   if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the

13   evidence and determine the truth but to determine whether there is a genuine issue for trial.

14   <u>Anderson</u>, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all

15   justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255. But, if the evidence of the

16   non-moving party is merely colorable or is not significantly probative, summary judgment

17   may be granted. <u>Id.</u> at 249-50.

18   **B.    Due Process and Classification**

19      A prisoner has no constitutional right to enjoy a particular security classification.

20   <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due

21   Process Clause is implicated in a prison's reclassification and transfer decisions). <u>See also</u>,

22   <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983), <u>overruled on other grounds by</u> <u>Sandin v. Conner</u>,

23   515 U.S. 472, 482-83 (1995); <u>Lucero v. Russell</u>, 741 F.2d 1129 (9th Cir. 1984). "As long

24   as the conditions or degree of confinement to which the prisoner is subjected is within the

25   sentence imposed upon him and is not otherwise violative of the Constitution, the Due

26   Process Clause does not in itself subject an inmate's treatment by prison authorities to

27   judicial oversight." <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976). But some placements

28   in maximum security custody may implicate liberty interests requiring due process

1    protections.  See Wilkinson v. Austin, 545 U.S. 209 (2005).

2          In analyzing a due process claim, the Court must first decide whether a plaintiff was

3    entitled to any process, and if so, whether he was denied any constitutionally-required

4    procedural safeguard.  Liberty interests that entitle an inmate to due process are "generally

5    limited to freedom from restraint which, while not exceeding the sentence in such an

6    unexpected manner as to give rise to protection by the Due Process Clause of its own force,

7    nonetheless imposes atypical and significant hardship on the inmate in relation to the

8    ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (internal citations omitted).  To

9    determine whether an inmate is entitled to the procedural protections afforded by the Due

10   Process Clause, the Court must look to the particular restrictions imposed and ask whether

11   they "present the type of atypical, significant deprivation in which a state might conceivably

12   create a liberty interest."  Sandin, 515 U.S. at 486.

13         To determine whether the sanctions are atypical and significant hardships, courts look

14   to the prisoner's conditions of confinement, the duration of the sanction, and whether the

15   sanction will affect the duration of the prisoner's sentence.  See Keenan v. Hall, 83 F.3d

16   1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison

17   but turns on the importance of the right taken away from the prisoner.  See Carlo v. City of

18   Chino, 105 F.3d 493, 499 (9th Cir. 1997).  See, e.g., Sandin, 515 U.S. at 472 (30 days

19   disciplinary segregation is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151

20   (3rd Cir. 2002) (four months in administrative segregation is not atypical and significant);

21   Griffin v. Vaughn, 112 F.3d 703, 706-708 (3rd Cir.1997) (fifteen months administrative

22   segregation is not atypical and significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir.

23   1997) (six months of confinement in especially disgusting conditions that were "more

24   burdensome than those imposed on the general prison population were not "atypical . . . in

25   relation to the ordinary incidents of prison life."); Jones v. Baker, 155 F.3d 810 (6th Cir.

26   1998) (two and one-half years of administrative segregation is not atypical and significant).

27   ///

28   ///

**IV.     Analysis - Whether Plaintiff's Maximum Custody Placement was Atypical and Significant**

The Court finds that based on the record in this case, the conditions of Plaintiff's confinement in maximum custody did not constitute an atypical or significant hardship relative to the ordinary incidents of prison life such that Plaintiff was entitled to due process before his reclassification.

In <u>Wilkinson</u>, the Supreme Court observed that following <u>Sandin</u>, Courts of Appeals had not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant. 545 U.S. at 223. It also noted that the divergence "indicates the difficulty of locating the appropriate baseline . . ." but that it need not resolve the issue in <u>Wilkinson</u>. <u>Id.</u> In <u>Wilkinson</u>, the Court held that inmates had a liberty interest protected by the Due Process Clause in avoiding assignment to the Ohio supermax prison; those facilities were designed to segregate the most dangerous prisoners from the general population, and the conditions were highly restrictive. <u>Id.</u> at 213. Conditions at the Ohio facility under consideration in <u>Wilkinson</u> were more restrictive than death row or the administrative control units. <u>Id.</u> at 214. Inmates remained in their 7 x 14 foot cells 23 hours-per-day; a light remained on at all times, although it was dimmed; and during the one hour-per-day that the inmate could leave his cell, access was limited to one of two recreation areas. <u>Id.</u> Conversation was not permitted from cell to cell; the placement was indefinite, and after the initial review, it was reviewed only annually; and placement disqualified an otherwise eligible inmate from parole consideration. <u>Id.</u> at 223-24.

The Court reasoned that, but for the especially severe limitation on all human contact, the conditions would apply to most solitary confinement facilities. The Court also found two additional factors that compelled a finding that the supermax facility's conditions were atypical and significant. The first was duration; placement was indefinite and after reviewed only annually.[3] Second, placement disqualified an inmate for parole- eligibility

---

[3] Here, Plaintiff was in maximum custody for nineteen months between August 2006 and February 2008 (Doc. # 62, Ex. A, Attach. 2).

consideration. Id. at 224.

The facts of this case are not congruent with Wilkinson in at least two important respects because there are no allegations that the conditions in maximum custody are significant and atypical in relation to the ordinary incidents of prison life and there is no evidence that Plaintiff's placement in maximum custody affected his eligibility for parole consideration. The Court will address each issue in turn.

**A.      Conditions of Confinement**

Defendants submit evidence that inmates housed in maximum custody are provided with regular meals, opportunities for showers three days a week, exercise outside of cells for at least one hour three days a week, visitation privileges, and they are allowed to possess a television, clock, and radio (DSOF ¶ 69; Doc. # 62, Ex. G, Pla. Dep. at 40:10-41:17). None of these conditions suggest an atypical or significant deprivation.

In response, Plaintiff does not contest Defendants' evidence regarding the conditions of confinement in maximum custody with the exception of his contention that the meals were smaller and mostly cold (id.). But Plaintiff does not describe the food or explain in any way how those meals constituted a significant and atypical hardship. Indeed, in his deposition he acknowledged that the trays were served in intervals identical to that in other detention units (id. at 41:22-24). Notably, he does not allege that the meals were nutritionally insufficient or that they were inedible or otherwise inadequate. Prison food need only be sufficiently adequate to maintain health. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Consequently, there is no indication that Plaintiff's meals were not nutritious, much less that they constituted an atypical and significant hardship.

Nor has Plaintiff presented any argument or evidence that he was denied human contact. This is significant because the isolation aspect of the inmates' placement in Ohio's supermax facility was essential to the Supreme Court's decision that those conditions were atypical and significant. Without even an allegation that Plaintiff's maximum custody placement resulted in any deprivation of human contact, and with Plaintiff's acknowledgment that he was permitted visitation, on this record the Court cannot conclude

1  that the conditions of confinement in maximum custody rise to the level found in <u>Wilkinson</u>

2  and therefore constitute a significant and atypical hardship.

3          Plaintiff does contend, however, that his maximum custody placement is significant

4  and atypical because inmates from his DNHW list *may* be housed in his unit (Doc. # 87 at

5  9).  As a result, Plaintiff claims that inmates that have threatened or assaulted Plaintiff *could*

6  be housed in his unit (<u>id.</u>).  But this precarious argument fails because Plaintiff has failed to

7  articulate *any* instance where Plaintiff was actually housed with or in contact with anyone

8  from his DNHW list or was placed in danger in any way.[4]  This hypothetical argument is

9  nothing more than a conclusory allegation that is unsupported by factual material and

10  insufficient to defeat summary judgment.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir.

11  1989).  In sum, there is no evidence in this record from which the Court could infer that the

12  conditions of confinement in maximum custody are significant and atypical in relation to the

13  ordinary incidents of prison life.

14          Plaintiff also claims that the ADC's use of mandatory language in its reclassification

15  manual itself creates a liberty interest that triggers due process protections (Doc. # 87 at 3).

16  This argument fails, however, because it is precisely what was considered and rejected in

17  <u>Sandin</u>.  515 U.S. at 483 ("[W]e believe that the search for a negative implication from

18  mandatory language in prisoner regulations has strayed from the real concerns undergirding

19  the liberty protected by the Due Process Clause.").  Rather, the Supreme Court determined

20  that only those conditions that are significant and atypical in relation to the ordinary incidents

21  of prison life are those that create a liberty interest.  <u>Id.</u>  Because the Court has already

22  articulated that no genuine issue of fact exists as to whether the conditions of confinement

23  in maximum custody were atypical and significant, this contention fails.

24

25          [4] Plaintiff does allege that one inmate from his DNHW list is currently housed in
26  Plaintiff's unit (Doc. # 87 at 11).  But Plaintiff's current unit is not maximum custody; rather,
    it is close custody (one level lower), and Plaintiff's Complaint does not challenge the
27  conditions of his confinement in close custody.  Plaintiff has also adduced evidence of an
28  assault from 2005, but this occurred before his placement in maximum custody and is
    therefore irrelevant (Doc. # 88, Ex. 17).

1   Summary judgment is appropriate when a party fails to make a showing sufficient to

2   establish the existence of an element essential to his case and on which he would have the

3   burden of proof at trial.  Celotex Corp., 477 U.S. at  322-23 (articulating that the moving

4   party need not support its motion with evidence negating the opponent's claim).  Plaintiff has

5   the ultimate burden of proof to show that the conditions in maximum custody were

6   significant and atypical, but he has failed to meet that burden with any credible allegations

7   or competent evidence.

8       **B.      Parole Eligibility**

9       Defendants also maintain that there is no evidence that Plaintiff's placement in

10  maximum custody affects the duration of his sentence (Doc. # 61 at 9).  In response, Plaintiff

11  presents two arguments: (1) the state has created a liberty interest that triggers due process

12  protection, and (2) Plaintiff may be forced to manufacture a weapon to protect himself from

13  inmates from his DNHW list, which in turn might affect his parole eligibility.

14      In support of his first argument, Plaintiff cites Ariz. Rev. Stat. § 41-1604.06, which

15  requires that an inmate receive a hearing before he is reclassified to a noneligible-earned-

16  release-credit class.  Plaintiff contends that this statute creates a liberty interest triggering due

17  process protections.  Plaintiff's reliance on this statute is misplaced, however, because he has

18  never alleged that his placement in maximum custody affected his eligibility for parole or

19  affected his earned-release credits.  Indeed, Plaintiff acknowledges that he is eligible for

20  parole consideration, because he received a parole hearing (Doc. # 87 at 11; PSOF ¶ 78).[5]

21  It appears that Plaintiff has confused eligibility for a parole hearing with being granted

22  parole.  Consequently, because there has been no allegation or evidence that Plaintiff's

23  placement in maximum custody rendered him ineligible for a parole hearing, Ariz. Rev. Stat.

24

25      [5] Plaintiff also complains that the information used to support his reclassification also
    was used to deny him parole (Doc. # 87 at 11).  "A prisoner has no constitutional or inherent
26  right to be conditionally released before the expiration of a valid sentence."  Bergen v.
    Spaulding, 881 F.2d 719, 721 (9th Cir. 1989).  Moreover, to the extent that Plaintiff claims
27  he was denied parole in violation of his due process rights, that claim is barred by Heck v.
    Humphrey, 512 U.S. 477 (1994), because it necessarily implicates the validity or duration
28  of his confinement.

1  § 41-1604.06 cannot form the basis of a due process challenge to his maximum custody

2  reclassification.

3      Plaintiff also contends that his parole eligibility could have been affected by his

4  maximum custody placement because he "may have been forced to possess or manufacture

5  a weapon [which would] affect [his] prison sentence" (Doc. # 87 at 11). Plaintiff again refers

6  to the hypothetical possibility that inmates from his DNHW list could have been housed in

7  his maximum custody unit. But as stated, Plaintiff does not allege that he was ever put into

8  contact with any individual from his DNHW list. In any event, Plaintiff's argument that he

9  is entitled to due process protection before placement in maximum custody because he might

10  be forced to manufacture a weapon while housed there is frivolous and insufficient to defeat

11  summary judgment.

12      On summary judgment, the nonmoving party must do more than "simply show that

13  there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd.

14  v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there

15  is sufficient evidence favoring the non-moving party. Anderson, 477 U.S. at 249. In this

16  case, neither Plaintiff's Complaint nor his responses to Defendants' summary judgment

17  motion present any allegations or evidence that the conditions of his confinement in

18  maximum custody were atypical and significant. For this reason, the Court finds that no

19  genuine issue of material fact exists for trial and Defendants are entitled to summary

20  judgment. As a result, the Court need not reach Defendants' remaining contentions.

21  **IT IS ORDERED:**

22      (1)   The reference to the Magistrate Judge is withdrawn as to Defendants' Motion

23  for Summary Judgment (Doc. # 61).

24      (2)   Defendants' Motion for Summary Judgment (Doc. # 61) is **granted**.

25      (3)   Defendants' Motion to Strike Plaintiff's Supplemental Response (Doc. # 101)

26  is **denied**.

27      (4)   Plaintiff's Motion to Strike Defendants' Reply in support of their Motion to

28  Strike (Doc. # 105) is **denied**.

1        (5)    The action is terminated, and the Clerk of Court must enter judgment

2    accordingly.

3        DATED this 20th day of March, 2009.

4

5

6    _____

7    Mary H. Murguia
     United States District Judge